CHARLES BENEDICT *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. FEDERAL KEMPER LIFE ASSURANCE COMPANY, d/b/a Zurich Kemper Life, Defendant-Appellee.

First District (1st Division)   No. 1—99—3758

Opinion filed October 9, 2001.

Michael B. Hyman and William H. London, both of Much Shelist Freed Denenberg Ament & Rubenstein, P.C., of Chicago, and Glen DeValerio, John Peter Zavez, and John Pentz, all of Berman, DeValerio & Pease, L.L.P., and Richard J. Vita, both of Boston, Massachusetts, for appellants.

J. Kevin McCall and Clark C. Johnson, both of Jenner & Block, of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs, Charles Benedict and Frederick J. Hanifan, appeal the circuit court's dismissal with prejudice of their second amended complaint for failure to state a cause of action. Plaintiffs filed a one-count complaint for breach of contract based upon whole life insurance policies sold to them by defendant, Federal Kemper Life Assurance Company, d/b/a Zurich Kemper Life (Kemper). Plaintiffs allege that they purchased Kemper life insurance policies with the understanding that they would pay out-of-pocket annual premiums for five years and, thereafter, the policy would accumulate a "cash value" to cover future premium payments. This feature is known as a "vanishing premium." Plaintiffs allege that Kemper breached the life insurance policies when

it continued to require the insured to pay premiums out-of-pocket after five years. The circuit court concluded that the Kemper policy was not ambiguous and Kemper did not breach its contract with plaintiffs. The issues on appeal are (1) whether the Kemper life insurance policy is ambiguous so that parol evidence may be considered in determining whether Kemper did in fact breach the contract and, if so, (2) whether the statute of limitations bars plaintiffs' claim. For the reasons stated below, we affirm the decision of the circuit court.

## SUMMARY OF ALLEGATIONS

The named plaintiffs, and those they purportedly represent, purchased life insurance policies from Kemper from 1980 forward. The second amended complaint alleges that Kemper entered into life insurance contracts with its policyholders which contained "vanishing premiums." The plaintiffs allege that Kemper agents used sales illustrations to sell policies which showed that, after a stated number of years, the obligation of the insured to make out-of-pocket premium payments would vanish.

### Facts Pertaining to Charles Benedict

The complaint alleges that in 1984, Kemper contacted named plaintiff Charles Benedict and persuaded him to purchase a $50,000 whole life insurance policy based on illustrations showing premium payments "vanishing" after five years. The complaint further alleges that the sales agent provided an illustration generated by Kemper which promised that, after five years, Benedict would not have to make another out-of-pocket premium payment for the life of the policy. Benedict paid a premium on his policy for five years, and in the sixth year, he received another premium bill. Benedict has continued to pay premiums out-of-pocket.

### Facts Pertaining to Frederick J. Hanifan

The complaint alleges that named plaintiff Frederick J. Hanifan was contacted by Kemper and persuaded to purchase a $100,000 whole life insurance policy based on a sales illustration similar to the one shown to Benedict. The complaint alleges that Hanifan was also shown a sales illustration which indicated that his out-of-pocket payments would "vanish" after five years. Hanifan paid premiums for five years. Kemper sent a sixth premium bill to Hanifan and Hanifan subsequently surrendered his policy.

The second amended complaint contains one count for breach of contract. The plaintiffs allege that the Kemper policies promised that out-of-pocket premium costs to plaintiffs would vanish at a certain point. According to the complaint, Kemper breached these contracts

by demanding that plaintiffs pay additional out-of-pocket premiums beyond the dates originally agreed to or risk having their policies canceled.

Kemper filed a motion to dismiss the complaint, arguing that the insurance policies unambiguously preclude a vanishing premium promise. Kemper asserts that the integration clause in the policy along with the parol evidence rule preclude consideration of the sales illustration. Moreover, Kemper contends that the sales illustration does not even support the plaintiffs' claim. Finally, Kemper maintains that even if parol evidence was considered here, the five-year limitation on actions based on oral contracts would bar plaintiffs' claim.

The circuit court found that the contract, consisting of the policy and the application, was not ambiguous so that the sales illustration could not be considered. The court further stated that even if it could properly consider the sales illustration, it did not support the claim that Kemper promised a vanishing premium. Finally, the circuit court stated that if the plaintiffs relied on parol evidence, their claim would be barred by the five-year statute of limitations.

## DISCUSSION

■ We review *de novo* the dismissal of a complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)). *Bloom v. Braun*, 317 Ill. App. 3d 720, 725, 739 N.E.2d 925, 928 (2000). A reviewing court must construe the allegations in the light most favorable to the plaintiffs and determine whether plaintiffs have alleged sufficient facts to establish a cause of action on which relief may be granted. *Weatherman v. Gary-Wheaton Bank of Fox Valley*, 186 Ill. 2d 472, 491, 713 N.E.2d 543 (1999). Furthermore, the reviewing court must ascertain whether a genuine issue of material fact existed precluding dismissal or, absent an issue of fact, whether the dismissal was proper as a matter of law. *Bloom*, 317 Ill. App. 3d at 725.

■ In Illinois, contract interpretation follows the four corners doctrine so that we look only to the language of the contract to determine if it is susceptible to more than one meaning. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 885 (1999).[1] If

---

[1] The defendant's assertion that *Air Safety* "categorically 'precludes the consideration of extrinsic evidence' without regard to whether the extrinsic evidence adds, subtracts, clarifies, or repeats the integrated writing" is misleading. The issue in *Air Safety* was whether parol evidence may be provisionally admitted to show that an ambiguity exists. The Illinois Supreme Court held that the four corners rule precludes the consideration of parol evidence where the contract is facially unambiguous. The *Air Safety* court did not preclude the consideration of parol evidence if the contract is found to be ambiguous.

the language of the contract is facially unambiguous, then the contract is interpreted without the use of parol evidence. *Air Safety, Inc.*, 185 Ill. 2d at 462, citing *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991). If, however, the court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present and parol evidence may be admitted to aid the trier of fact in resolving the ambiguity. *Air Safety*, 185 Ill. 2d at 462-63; *Whitlock*, 144 Ill. 2d at 447.

■ Insurance contracts are subject to the same rules of construction applicable to other types of contracts. *Hall v. Country Casualty Insurance Co.*, 204 Ill. App. 3d 765, 773, 562 N.E.2d 640 (1990). When construing an insurance contract, it is our duty to ascertain and give effect to the intent of the parties and the best indicator of the parties' intent is the language used in the agreement. *Wallis v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 566, 571, 723 N.E.2d 376 (2000). If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Hartford Insurance Co. of Illinois v. Kelly*, 309 Ill. App. 3d 800, 806, 723 N.E.2d 288 (1999). An insurance policy is said to be ambiguous if it is subject to more than one reasonable interpretation. *Continental Casualty Co. v. Roper Corp.*, 173 Ill. App. 3d 760, 767, 527 N.E.2d 998 (1988).

Here, plaintiffs allege that Kemper breached the insurance contract when premiums failed to "vanish." Plaintiffs cannot, however, identify a specific provision of the written policies that was breached. Since the plaintiffs cannot show that any express provision of the written policy was breached, their claim is solely predicated upon the alleged oral representations made by the sales agent and the sales illustration used at the point of sale. In order to consider this extrinsic evidence, the plaintiffs argue that the contract is ambiguous because it does not say whether premiums will be paid out of the cash value of the policy or by the policyholder. The plaintiffs contend that since an ambiguity as to the *source* of the premium payment exists, the court may consider parol evidence. We are not persuaded by this argument since we specifically find that the contract is unambiguous.

■ A life insurance contract must be construed according to the sense and the meaning of the terms, and if the language is clear it must be taken according to its plain, ordinary and popular sense. *Dempsey v. National Life & Accident Insurance Co.*, 404 Ill. 423, 88 N.E.2d 874 (1949).

Here, the Kemper policy states: "Premiums must be paid while the insured is alive for the time shown in the Policy Specifications." The policy also states:

"On the fifth policy anniversary, and on each policy anniversary

thereafter, [Kemper] may require lower premiums in accordance with the premium payment option section of this policy. In such case, you may continue to pay the premium shown, and the insured's death benefit may increase in accordance with the death benefit section of this policy."

The premium payment section of the policy states:

"Premium payments are payable to us at the home office or to an authorized representative. A receipt for premium payments signed by our secretary will be furnished if paid to an authorized representative.

Premiums are payable in advance in the amounts and at the intervals shown in the Policy Specifications. Subject to our minimum, premiums may be paid each year, each 6 months, each 3 months or, as we agree each month. You may change the frequency of premium payments by paying the new premium rate on or before the due date. The entire premium paid on the basis selected is deemed fully earned on the due date."

The premium payment option provision states:

"At the end of the fifth and each later policy year, we will determine what premium(s), if any, is (are) required in the following year to maintain the policy in force for an amount equal to the initial death benefit. We will notify you what premium(s), if any, is (are) required for the next policy year.

The required annual premium may be less than the basic annual premium. Payment of the required annual premium will satisfy your premium obligation for one annual period. However, you may choose to pay the basic annual premium."

The Kemper policy also contains an integration clause which states, "This policy and the statements made in the application attached to this policy constitute the entire contract."

■ We find no ambiguity concerning the payment of premiums for the Kemper policies. The Kemper policy clearly states that, after the fifth policy year, the premium required each year may change and the insured would be notified of the minimum amount required to keep the policy in effect. The policy also clearly states that the insured may elect to pay more than the amount required. The policy does not specifically state the source of the premiums due the first five years. We see no reason to find an ambiguity in the policy because it does not specify the source of premium payments in the following years.

## CONCLUSION

For the reasons stated, we hold that the Kemper policy is unambiguous and that any enforcement of the alleged promises made at the point of sale would violate the parol evidence rule and must be

disregarded. Thus, we conclude that plaintiffs cannot maintain their breach of contract claim.[2]

Affirmed.

COHEN, P.J., and O'MARA FROSSARD, J., concur.

---

[2]We decline to rule on the statute of limitations issue as we have found that plaintiffs cannot maintain a cause of action for breach of contract.